IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MARIE ILENE PYZER,

           Plaintiff,

vs.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security;

           Defendant.

4:17CV3094

MEMORANDUM AND ORDER

Plaintiff, Marie Ilene Pyzer ("Pyzer"), seeks review of the decision by the defendant, Nancy A. Berryhill, Acting Commissioner of the Social Security Administration (the "Commissioner"), denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act ("SSA"). See 42 U.S.C. § 416(i) and § 423. For the reasons explained below, the Commissioner's decision will be affirmed.

**PROCEDURAL BACKGROUND**

On May 2, 2014,[1] Pyzer filed an application for benefits, alleging disability beginning August 31, 2012. (Tr. 150-51). Pyzer's claimed disabilities included diabetes, high blood pressure, carpal tunnel, hand/wrist problem, high cholesterol, acid reflux, digestive/metabolism problems, sleep apnea, allergies, and heart problems. (Tr. 166). Pyzer's application was initially denied on June 20, 2014, and then upon reconsideration on August 28, 2014. (Tr. 82, 93).

Pyzer requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 17, 2016. (Tr. 36-71). Following the hearing, the ALJ issued an unfavorable decision on March 25, 2016. (Tr. 17-31). The Appeals Council denied Pyzer's Request for Review of the ALJ's decision on May 22, 2017. (Tr. 1). Pyzer timely filed this action to set aside the Commissioner's decision. (Filing No. 1).

---

[1] Although the application itself is dated May 2, 2014, other places in the record refer to an April 25, 2014, filing date. (Tr. 20, 72, 82).

## FACTUAL SUMMARY

Pyzer was 40-years old at the time of the alleged onset date of her disability, and 44-years old as of the date the ALJ issued the decision. (Tr. 21, 31). Pyzer completed two years of college in 2011 and previously worked as a sales associate, an in-home caregiver, a youth supervisor, and as a coordinator and program manager at an advocacy center. (Tr. 167-68).

## THE ALJ's DECISION

The ALJ evaluated Pyzer's claim using the "five-step" sequential analysis prescribed by the Social Security Regulations.[2] See 20 C.F.R. § 404.1520(a)(4). In doing so, the ALJ found that Pyzer met the insured status requirements of the SSA through December 31, 2018, and that although Pyzer had worked after the alleged disability onset, such activity did not rise to the level of substantial gainful activity. (Tr. 22).

The ALJ found that Pyzer had severe impairments of cervical spine fusion, diabetes, carpal tunnel syndrome, and diabetic peripheral neuropathy, and non-severe impairments of earaches. The ALJ did not consider Pyzer's claims of headaches and nerve problems because there were no medical or clinical observations validating those symptoms. The ALJ found that Pyzer did not meet the burden of proof regarding specific impairments contained in the regulations. (Tr. 23).

The ALJ considered Pyzer's obesity in terms of its possible effects on her ability to work and perform activities of daily living, and incorporated her limitations due to her obesity into her residual functional capacity ("RFC"),[3] which the ALJ formulated as follows:

---

[2] The Social Security Administration uses a five-step process to determine whether a claimant is disabled:

> At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)(citing 20 C.F.R. §§ 404.1520(a) and 416.920(a)).

[3] "'Residual functional capacity' is 'the most [a claimant] can still do' despite the 'physical and mental limitations that affect what [the claimant] can do in a work setting' and is assessed based on all 'medically determinable impairments,' including those not found to be 'severe.'" *Gonzales*, 465 F.3d at 894 n.3 (quoting 20 C.F.R. §§ 404.1545 and 416.945).

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is only occasionally able to stoop, kneel, crouch, and crawl. The claimant is able to perform work that does not require the operation of foot controls or climbing ladders. She is able to perform work that does not require reaching overhead more than occasionally. She is able to finger objects frequently. Finally, the claimant is able to perform work that does not expose her to sustained and concentrated extreme temperatures or vibration.

(Tr. 24). In making this RFC determination, the ALJ considered all of Pyzer's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, including opinion evidence. (Tr. 24).

The ALJ considered Pyzer's testimony that she suffered from fatigue and headaches, which caused her to stay at home about one day per week. The ALJ also considered Pyzer's testimony and reports regarding exhaustion, hand pain and grasping difficulties, pain in her feet from neuropathy, previous part-time work, improvement of her symptoms when taking he prescribed mediation, and previous statements regarding her ability to perform daily activities and to walk and stand. (Tr. 27-28). The ALJ considered and discussed the medical evidence in the record, although the ALJ did not specifically discuss Pyzer's sleep apnea. (Tr. 25-27). The ALJ found that Pyzer's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms; however, the ALJ found Pyzers's statements concerning the intensity, persistence and limiting effects of those symptoms were not consistent with other evidence in the record. (Tr. 24-25). The ALJ also considered that there were no opinions from treating or examining physicians that Pyzer is disabled or has significant functional limitations greater than the ones discussed by the ALJ, and no recommendations that she limit her activities or seek further treatment. (Tr. 28).

In finding that Pyzer's functioning is "severely limited" with many functional limits, the ALJ gave the greatest weight to the opinions and treatment records of Dr. Douglas Beard, MD, and some weight to opinions and treatment records of Dr. Kent Allison, MD. The ALJ also gave substantial weight to the State agency medical consultants. (Tr. 28).

The ALJ found that Pyzer is capable of performing her past relevant work as a caregiver, sales associate, youth supervisor, program manager, and case aide. Stephen Schill, the impartial vocational expert, characterized those occupations as semi-skilled and light, unskilled and light, skilled and light, and skilled and sedentary, and testified that an individual with Pyzer's age,

3

education, work experience, and RFC would be able to perform the duties of the above jobs. (Tr. 29). In the alternative, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Pyzer also can perform. The vocational expert testified that Pyzer can perform the requirements of representative sedentary occupations such as an addressor, document preparer, and a callout operator. (Tr. 30). Based on the testimony of the vocational expert, and the medical and opinion evidence in the record, the ALJ determined that jobs exist in significant numbers in the national economy that Pyzer could perform, and, therefore, she was not disabled from August 31, 2012, through the date the application was filed. (Tr. 30-31).

In this appeal, Pyzer asserts that (1) the ALJ erred in not finding sleep apnea was a severe impairment; (2) the ALJ erred in evaluating Pyzers's credibility, as he did not properly consider the *Polaski* factors; and (3) the ALJ's errors tainted the subsequent RFC determination.

## STANDARD OF REVIEW

A reviewing court "will uphold the ALJ's decision to deny benefits if that decision is supported by substantial evidence in the record as a whole." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). In determining whether substantial evidence supports the ALJ's decision, the court considers evidence that both supports and detracts from the ALJ's decision. *Moore v. Astrue*, 623 F.3d 599, 605 (8th Cir. 2010) (internal citation omitted). The reviewing court "may not reverse simply because [it] would have reached a different conclusion than the ALJ or because substantial evidence supports a contrary conclusion." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). However, the court's review is "more than a search of the record for evidence supporting the Commissioner's findings, and requires a scrutinizing analysis, not merely a 'rubber stamp'" of the Commissioner's decision. *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008)(internal citations omitted).

## ANALYSIS

### I. Failure to Find Sleep Apnea is a Severe Impairment

Pyzer first argues that her sleep apnea constituted a severe impairment for purposes of step two of the sequential analysis, and that the ALJ erred in failing to mention or consider sleep apnea

in his decision. (Filing No. 19 at p. 12). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Although "[s]everity is not an onerous requirement for the claimant to meet . . . it is also not a toothless standard[.]" *Kirby*, 500 F.3d at 708 (internal citation omitted). Diagnosis of an impairment does not, on its own, indicate that the impairment is severe. See, e.g., *Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011) ("[A]lthough [the claimant] was diagnosed with depression and anxiety, substantial evidence on the record supports the ALJ's finding that [the claimant's] depression and anxiety was not severe.").

In this case, Pyzer testified she was diagnosed with sleep apnea, and the record reflects that Pyzer's medical history includes treatment for sleep apnea, including prescriptions of Modafinil, Trazodone, and Zolpidem. (Tr. 169). However, there is no evidence in the record demonstrating that Pyzer's sleep apnea significantly limits her ability to do basic work activities. Pyzer asserts that she is often fatigued and quit a previous job due to fatigue, suggesting such fatigue is the result of sleep apnea. (Filing No. 19 at p. 12). Yet, Pyzer testified her sleep is poor because she "wakes up in pain a lot" and has to "switch[] positions and things to get back to sleep." (Tr. 61). Such testimony does not establish that sleep apnea is the cause of her fatigue, but instead suggests Pyzer's poor sleep is a result of her other impairments. Additionally, there is no medical or opinion evidence in the record establishing that Pyzer has any work limitations as a result of her sleep apnea. Moreover, Pyzer testified that, although she has sleep apnea, her c-pap machine and medications help her sleep at night. (Tr. 60). Finally, while the ALJ made no specific findings with regard to Pyzer's sleep apnea, the ALJ did consider her testimony and other evidence regarding her fatigue and exhaustion when formulating Pyzer's RFC. Because there is no evidence in the record establishing that Pyzer's sleep apnea significantly limits her mental or physical ability to do basic work activities, the ALJ did not err in failing to find sleep apnea is a severe impairment.

## II.  Credibility Determination

Pyzer next argues that the ALJ erred in evaluating her credibility.[4] In this case, the ALJ found that Pyzer's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms; however, her statements concerning the intensity, persistence and limiting

---

[4] SSR 16-3p rescinded the previous Social Security ruling concerning a claimant's credibility effective March 28, 2016. The ALJ's decision was issued on March 25, 2016, and therefore the ALJ followed the previous policy.

effects of those symptoms were not consistent with other evidence in the record. (Tr. 24-25). The ALJ did not give "great weight" to Pyzer's "implicit allegation that she is unable to engage in any and all kinds of full-time, competitive, gainful employment on a sustained basis." (Tr. 29). After reviewing the matter, the Court finds that the ALJ's credibility determination is supported by substantial evidence in the record.

> In assessing a claimant's credibility, the ALJ must consider:
>
> > (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Pyzer contends that the ALJ considered "some" of the *Polaski* factors but did not consider all of the evidence and instead highlighted evidence favoring a finding that Pyzer is not credible. (Filing No. 19 at p. 14).

Pyzer contends the ALJ erred by failing to discuss side effects of her medications. Although the ALJ did not expressly discuss side effects of her medications, the ALJ "need not explicitly discuss each factor;" rather, "[i]t is sufficient if [the ALJ] acknowledges and considers [the] factors before discounting a claimant's subjective complaints." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)(quoting *Strongson*, 361 F.3d at 1072); see also *Buckner*, 646 F.3d at 558)(finding no error where ALJ did not expressly discuss some *Polaski* factors, including medication side effects). Moreover, the record reflects that Pyzer only reported the side effect of frequent urination in her activities of daily living report dated May 15, 2014, (Tr. 185), and in July 2014, reported no side effects from medications, (Tr. 193). Although Pyzer testified at the February 2016 hearing that she experiences drowsiness from her medications, Pyzer never complained to her physicians about any side effects. (Tr. 303); see *Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004)(concluding the ALJ properly discounted side effects of medication where claimant had not complained to doctors). Accordingly, the ALJ did not commit error in this regard.

Pyzer characterizes the ALJ's recitation of her credibility as "terse" and asserts that the ALJ did not properly highlight evidence supporting his finding, (Filing No. 19 at p. 14); however, the ALJ did provide a comprehensive discussion of Pyzer's testimony, reports, and medical records when assessing Pyzer's credibility. The ALJ discussed Pyzer's treatment records for her diabetes by Dr. Victor G deVilla. (Tr. 25-26; 359-401). Plaintiff saw Dr. deVilla on July 7, 2012, and he

6

prescribed additional medication to treat her diabetes, and by September 27, 2012, Dr. deVilla noted her diabetes was improving and that "clinically" Pyzer "feels good." (Tr. 366). Pyzer continued to see Dr. deVilla, and in December 2013, Pyzer reported that aside from allergies, she was feeling "well overall" and "tries to exercise and counter her carbohydrates," although she has "occasional tingling over her fingers" attributable to carpal tunnel syndrome. (Tr. 382). In May 2014, Dr. deVilla noted that Pyzer's lab work from April 2014 showed her A1c level was "good," her cholesterol level was "very good" and her 24-hour urine studies were normal for creatinine clearance and cortisol. (Tr. 387).

The ALJ discussed Pyzer's treatment for her back and upper right extremity symptoms. Pyzer underwent a cervical fusion procedure on January 11, 2013, to treat her back pain from thoracic spondylosis, and on January 25, 2013, she was seen for a follow-up and was described as doing "extremely well" and was allowed to be "unrestricted" in her activities. A follow-up MRI on June 3, 2013, reflected that the fusion appeared solid. (Tr. 250). Pyzer sought treatment from the emergency department for back pain on May 5, 2015, but by May 29, 2015, Pyzer's treating physician, Dr. Allison, noted that Pyzer's back pain was down to 2/10 from 9/10 because she had been "diligently doing physical therapy as well as taking her medical regimen." Dr. Allison opined that Pyzer "could return to work with basically no restrictions as long as she was able to avoid awkward lifting." (Tr. 500). The ALJ discussed Pyzer's carpal tunnel release procedure, and that in February 13, 2015, Dr. Michael Blei noted the procedure was successful with no evidence of neuropathy of the bilateral ulnar nerve. (Tr. 26).

The ALJ considered Pyzer's medical records documenting that she responded to treatment and medication for her pain and neuropathy. (Tr. 26). On May 9, 2014, treatment notes from Dr. deVilla indicate that Pyzer was "doing great," "denied[] arm pain," and was "walking regularly." (Tr. 251). On August 12, 2014, her neuropathy was "doing better," on December 9, 2014, she reported occasional pain over he hands, but for the most part Cymbalta was helping her, on April 14, 2015, she was feeling well and her peripheral neuropathy was stable and tolerable, and on August 13, 2015, her neuropathy "remain[ed] stable." (Tr. 521). Impairments controlled by treatment or medication suggest they are not disabling, *Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011), and subjective complaints of pain may be discounted in part based on inconsistent medical records. See *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003)(finding that the ALJ properly considered inconsistencies between a physician's notes and a claimant's testimony when analyzing credibility).

The ALJ also properly considered that there were no opinions from treating or examining physicians that Pyzer is disabled or has significant functional limitations greater than the ones discussed by the ALJ, and there are no recommendations that she limit her activities further. (Tr. 28). See, e.g., *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003)(noting that lack of physician-imposed restrictions may discredit a claimant's credibility).

The ALJ also considered and discussed evidence regarding Pyzer's daily activities, including her testimony that she occasionally drives 30 miles to visit her father, can do some limited cooking and cleaning, goes grocery shopping with her husband's help, can groom and bathe herself without issues although it takes longer, goes camping with her husband in the summer and helps prepare their meals, attends a Bible study group at church for two hours once a week, and had volunteered two years before with the North Platte Fire Department Auxiliary preparing meals for firemen. (Tr. 24-25, 52, 57-59-62). Though Pyzer asserts these activities were taken out of context, the Court finds no error in the ALJ's assessment that "The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 27); see, e.g., *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004)(finding claimant's description of daily activities including grocery shopping, cooking, driving, and church attendance were inconsistent with allegations of disabling pain). The ALJ also considered that Pyzer worked after the alleged onset date, which suggests her impairments are not as debilitating as she claims. See *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005)("Working generally demonstrates an ability to perform a substantial gainful activity.").

"The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000). The ALJ is responsible for deciding questions of fact, including the credibility of a claimant's subjective testimony about his or her limitations. See *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Id.* at 714. In this case, the Court finds that the ALJ properly applied *Polaski* and discounted Pyzer's credibility based upon the record as a whole. See *Goff*, 421 F.3d at 792 ("The ALJ may disbelieve subjective complaints if there are inconsistencies in the evidence as a whole."). As such, this Court defers to the ALJ's credibility finding.

Finally, Pyzer asserts that the ALJ's RFC determination was tainted due to the alleged errors made at step two and in assessing her credibility. Having concluded the ALJ did not err in either determination, and upon review of the record as a whole, the Court finds the ALJ's RFC determination is supported by substantial evidence in the record and was not erroneous.

## CONCLUSION

For the reasons stated above, and after careful consideration of the arguments presented in Pyzer's brief, the Court finds that the Commissioner's decision is supported by substantial evidence on the record as a whole and is not contrary to law. Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion to Affirm Commissioner's Decision ([Filing No. 20](#)) is granted;
2. Plaintiff's Motion for Order Reversing Commissioner's Decision ([Filing No. 18](#)) is denied, and
3. A separate judgment will be entered.

Dated this 18th day of September, 2018.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge